UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

TORY METTS,

    Plaintiff,

v.                                              Case No: 6:24-cv-1712-JSS-EJK

CIRCLE K STORES INC.,

    Defendant.
_____/

## ORDER

Plaintiff, Tory Metts, moves to remand this matter to the Seventh Judicial Circuit in Volusia County, Florida. (Motion, Dkt. 9.) Plaintiff also moves for attorney's fees and costs incurred as a result of the removal. (*Id*.) Defendant Circle K Stores Inc. opposes this motion. (Dkt. 16.) Upon consideration, Plaintiff's Motion is granted in part and denied in part.

## BACKGROUND

This action arises out of Circle K's alleged racial discrimination, harassment, and retaliation against its former employee, Tory Metts. (Dkt. 1-1 ¶ 3.) On May 7, 2024, Plaintiff filed a complaint against Circle K, pursuant to the Florida Civil Rights Act (FCRA), Fla. Stat. §§ 760.01–11, in the Seventh Judicial Circuit in Volusia County, Florida. (Dkt. 1-1.) In the civil cover sheet accompanying the complaint, Plaintiff estimated her damages to be between "$50,001-75,000," but she failed to make a specific monetary demand for damages in the complaint. (*Id.*) On September

20, 2024, Defendant removed the case to this court based on diversity jurisdiction. (Dkt. 1 at 3.) One week later, on September 27, 2024, Plaintiff filed the instant Motion seeking remand to state court contending that the amount in controversy does not exceed $75,000. (Dkt. 9 at 3.) Plaintiff does not dispute diversity of citizenship of the parties, as Plaintiff is a Florida citizen and Defendant is a citizen of Arizona and Texas. (Dkt. 1 at 3–4; Dkt. 9 at 3.)

## APPLICABLE STANDARDS

When the "plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand." *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994). If the damages sought are not specified in the complaint, "the removing party bears the burden of establishing the jurisdictional amount by a preponderance of the evidence." *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1208 (11th Cir. 2007). "[T]he removal-remand scheme set forth in 28 U.S.C. §§ 1446(b) and 1447(c) requires that a court review the propriety of removal on the basis of the removing documents. If the jurisdictional amount is either stated clearly on the face of the documents before the court or readily deducible from them, then the court has jurisdiction. If not, the court must remand." *Id.* at 1211. A district court may not engage in a preponderance of the evidence assessment that "would amount to unabashed guesswork." *Id.*

A district court should not rely on a plaintiff's indeterminate damages statements in a pleading to conclude that the amount in controversy requirement is not met. *See Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1064 (11th Cir. 2010). Doing so would allow for "artful pleading" that could make "federal jurisdiction disappear."

*Id.* Therefore, a district court may make "'reasonable deductions, reasonable inferences, or other reasonable extrapolations' from the pleadings to determine whether it is facially apparent that a case is removable." *Id.* at 1061–62 (11th Cir. 2010) (quoting *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 752 (11th Cir. 2010)). "[C]ourts may use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements." *Id.* at 1062.

## ANALYSIS

### A. Amount-in-Controversy

In Defendant's Notice of Removal, Defendant asserts that the amount in controversy requirement of $75,000 would likely be satisfied. (Dkt. 1 at 5.) Specifically, Defendant asserts that if Plaintiff prevails, she would be entitled to $59,520 in back pay damages, $24,960 in front pay damages, $30,000 in compensatory damages, and $100,000 in punitive damages for a total of $214,480 in potential damages. (*Id.* at 7–10). Defendant also asserts that Plaintiff is entitled to $31,250 in attorneys' fees if she prevails. (*Id.* at 10).

In her Motion, Plaintiff asserts that her back pay damages are well below Defendant's estimate. First, Plaintiff explains that she expected to work significantly less hours per week than Defendant's calculation assumes. Specifically, she expected to work approximately 20–25 hours weekly instead of the 40 hours weekly Defendant relied upon in calculating Plaintiffs back pay damages. (Dkt. 9 at 8.) Second, Plaintiff asserts that after she mitigated her damages, her back pay damages are closer to

$10,000. (*Id.* at 13.) As a result, according to Plaintiff, her potential damages total $40,000. Plaintiff also argues that it is impermissible to rely upon front pay, compensatory, and punitive damages to calculate the amount in controversy. (*Id.* at 9–12.) Last, Plaintiff argues that her attorneys' fees are "minimal" as the case is "in its mere infancy." (*Id.* at 12.)

Upon consideration, Defendant fails to demonstrate facts supporting the court's exercise of jurisdiction in this case.

### 1. Back Pay Damages

In its Notice of Removal, Defendant contends that Plaintiff's potential back pay damages totals $59,520. (Dkt. 1 at 7.) Defendant reached this figure by multiplying Plaintiff's $12 hourly rate by 40 hours, equating to $480 per week. According to Defendant, "Plaintiff's potential back pay can be determined by calculating her lost wages from the date she was terminated [on May 2, 2023] through the date of trial." (*Id.*) Thus, Defendant contends, when "conservatively applied to an estimated trial date" one year from the date the case was filed, "Plaintiff could be entitled to approximately 124 weeks of back pay damages, or approximately $59,520." (*Id.*)

The court agrees that Plaintiff's $12 hourly rate is a reasonable measure for calculating Plaintiff's back pay damages. *See, e.g.*, *McCullough v. NESCO Res., LLC*, 8:17-cv-2714-T-30TBM, 2017 WL 11548397, at *2 (M.D. Fla. Dec. 15, 2017) (using an employee's hourly rate to approximate back pay damages). The court, disagrees however, with Defendant's contention that an estimate of 40 hours weekly is reasonable given Plaintiff's work history. (Dkt. 9 at 16–19.) *Roe*, 613 F.3d at 1061–

62. Defendant fails to provide evidence indicating that it expected Plaintiff to work forty hours weekly. (*See generally* Dkts. 1 & 16.) Plaintiff persuasively maintains that 20 hours per week more accurately forecasts her anticipated schedule. (Dkt. 9 at 8.) She has established that she worked 26, 20.61, 4.03, and 1.88 hours weekly during her first four weeks of employment — which amounts to an average of 13.1 hours weekly. (Dkt. 9 at 8.) *See Wendt v. Universal Prot. Serv.*, LLC, 23-cv-21383-BLOOM/Otazo-Reyes, 2023 WL 4781777, at *2 (S.D. Fla. July 27, 2023) (calculating back pay damages based on an average of hours plaintiff worked weekly).

Defendant also contends that back pay damages should be calculated through the date of trial to determine the amount in controversy. (Dkt. 16 at 4–5.) *Compare Fusco v. Victoria's Secret Stores, LLC*, 806 F. Supp. 2d 1240, 1244 (M.D. Fla. 2011) ("It appears that back pay for purposes of the amount in controversy requirement should be calculated to the date of trial."); *Sheehan v. Westcare Found., Inc.*, No. 8:12-cv-2544-T-33TBM, 2013 WL 247143, at *2 (M.D. Fla. Jan. 23, 2013) (same); *Cashman v. Host Int'l Inc.*, No. 8:10-cv-1197-T-30MAP, 2010 WL 4659399, at *2 (M.D. Fla. Nov. 9, 2010) (same) *with Walcott v. Ferrelgas, Inc.*, 6:21-cv-154-GAP-DCI, 2021 WL 3518204, at *1–2 (M.D. Fla. Mar. 8, 2021) (calculating back pay through the date of removal to determine the amount in controversy); *Davis v. Tampa Ship, LLC*, No. 8:14-cv-651-T-23MAP, 2014 WL 2441900, at *2 (M.D. Fla. May 30, 2014) (same); *Henderson v. Ricoh*, No. 8:09-cv-2467-T-23TGW, 2009 WL 51775, at *2 (M.D. Fla. Dec. 22, 2009) (same); *Snead v. AAR Mfg., Inc.*, No. 8:09-cv-1733-T-30EAJ, 2009 WL 3242013, at *3 (M.D.

Fla. Oct. 6, 2009) (same). "What counts is the amount in controversy at the time of removal." *S. Fla. Wellness, Inc. v. Allstate Ins. Co.*, 745 F.3d 1312, 1315 (11th Cir. 2014). Further, although a "removing defendant [may] make specific factual allegations establishing jurisdiction and can support them (if challenged by the plaintiff or the court) with evidence, combined with reasonable deductions, reasonable inferences, or other reasonable extrapolations," the court may not engage in impermissible speculation to determine the amount in controversy. *Pretka*, 608 F.3d at 753-54. Here, the deductions and extrapolations Defendant proposes to calculate Plaintiff's back pay damages are too uncertain. As the court explained in *Ambridge*, "[i]f calculated through the date of trial, the Court would be required to not only estimate a trial date, but also predict whether Plaintiff will or will not continue to mitigate his damages between the date of removal and that estimated trial date. These predictions would be too uncertain and based on the unknown, impermissibly formed from speculation, rather than evidence before the Court." *See Ambridge v. Wells Fargo Bank, N.A.*, No. 8:14-cv-1212-EAK-TBM, 2014 WL 4471545, at *3 (M.D. Fla. Sept. 10, 2024). Accordingly, this court will calculate back pay damages through the time of removal given the facts and evidence provided in this case. Doing so prevents the court from engaging in any "impermissible speculation" in determining the amount in controversy. *Walcott*, 2021 WL 3518204 at *2 (citing *Lowery*, 483 F.3d at 1211). Therefore, this court will calculate back pay damages for 72 weeks.[1]

---

[1] Plaintiff was terminated on or about May 2, 2023. (Dkt. 1 at 7.) Defendants removed this case to this court on September 20, 2024. (Dkt. 1.)

In light of the foregoing, the court estimates that Plaintiff's back pay damages equals $11,318.40 which comprises Plaintiff's pay rate of $12 per hour multiplied by 13.1 average hours per week multiplied by 72 weeks.[2] *See Wendt*, 2023 WL 4781777, at *2. Plaintiff contends that her backpay damages should be reduced even further because she has mitigated her damages. (Dkt. 9 at 8–9.) For jurisdictional purposes, back pay damage calculations should "be adjusted for any mitigating employment income earned prior to removal when those mitigating efforts are supported by a plaintiff's sworn affidavit." *Walcott*, 2021 WL 3518204, at *2 (citing *Moreland v. Suntrust Bank*, 981 F. Supp. 2d 1210, 1212–1213 (M.D. Fla. 2013). As no such affidavit was provided here and the back pay damage calculation before any mitigation is well below the amount in controversy requirement, the court will not speculate as to how much of this calculation could potentially be reduced by Plaintiff's mitigation efforts.

### 2. Front Pay Damages

Defendant also contends that one year of Plaintiff's potential front pay damages should be included in the amount in controversy calculation. (Dkt. 1 at 7 & Dkt. 16 at 7–8). Plaintiff argues that her potential front pay damages are too speculative to include in the amount in controversy calculation. (Dkt. 9 at 9–10). Front pay damages are damages "awarded for lost compensation during the period between judgment and

---

[2] Even if the court agreed with plaintiff and decided to calculate back pay damages through an estimated date of trial, back pay damages would still be well below the $75,000 amount in controversy requirement. Calculating back pay damages using 124 weeks in place of 72 weeks would yield back pay damages of $19,492.80. *See Gonzalez v. Honeywell Int'l, Inc.*, 8:16-cv-3359-T-30TGW, 2017 WL 164358, at *2 n.1 (M.D. Fla. Jan. 17, 2017) (finding an estimated trial date of one year from removal to be a reasonable estimate).

reinstatement or in lieu of reinstatement." *Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 846 (2001).  Notably, "the FCRA does not explicitly authorize a recovery of front pay."  *Scott v. Walmart, Inc.*, 528 F. Supp. 3d 1267, 1276 (M.D. Fla. 2021).

The court has concluded that calculating back pay damages between the time of removal and trial is too speculative for amount in controversy purposes.  Likewise, the court concludes that calculating front pay damages between a potential judgment and reinstatement or in lieu of reinstatement is too speculative at this juncture and thus will not be considered in the amount in controversy calculation.  *See Scott*, 528 F. Supp. 3d at 1276 ("[T]he [c]ourt finds that including an estimated award of front pay in this case is improper where the statutory authorization for such an award is absent in the first instance and its inclusion would necessarily rely on speculative estimates that are not in controversy at the time of removal."); *see also Walcott*, 2021 WL 3518204 at *2 ("Calculating front pay at this time would be too speculative, especially in light of [plaintiff's] mitigating employment, so the [c]ourt declines to include it in its calculation."); *Kruse v. Sam's W., Inc.*, 8:20-cv-2305-CEH-JSS, 2021 WL 2632436, at *4 (M.D. Fla. June 25, 2021) ("The [c]ourt will not 'augment' the amount in controversy with speculative front pay calculations.").

### 3. Compensatory Damages

Defendant contends that because Plaintiff seeks damages for "emotional distress," (Dkt. 1-1, ¶ 3), that compensatory damages of $30,000 should be included in the amount in controversy. (*Id.* at 8–9).  In an FCRA action, "[t]he court may also award compensatory damages, including, but not limited to, damages for mental

anguish, loss of dignity, and any other intangible injuries, and punitive damages." Fla. Stat. § 760.11(5). However, to be included in the calculation of the amount in controversy, compensatory damages must not be "too speculative." *Walcott*, 2021 WL 3518204 at *2. Here, the court finds that Defendant's approximation of compensatory damages is too speculative.

Defendant relies on the proposition that "it is appropriate to consider compensatory damage awards, including those based on emotional distress in prior similar cases." (Dkt. 1 at 8.) The court agrees that consideration of such awards may be appropriate. *Simmons v. Washington Mut. Fin., Inc.*, No. 8:06-CV-01613-JDW-TBM, 2007 WL 641101, at *1 (M.D. Fla. Feb. 26, 2007) ("A removing defendant can discharge his burden of showing that the plaintiff's claim meets the amount in controversy requirement by presenting decisions rendered in *comparable* cases." (emphasis in original)). Nevertheless, Defendant has not adequately demonstrated how the cases it cited in response to the Motion are comparable. In Defendant's Notice of Removal, it cites a $75,000 jury award in *Reilly v. Duval Cnty. Pub. Sch.*, No. 3:04-cv-1320-J-32MCR, 2007 WL 2120547, at *1 (M.D. Fla. July 23, 2007), and a $100,000 emotional distress damages award in *Copley v. BAX Glob., Inc.*, 97 F. Supp. 2d 1164, 1172 (S.D. Fla. 2000). The fact that these cases involve employment discrimination is insufficient to include compensatory damages in the calculation for the amount in controversy. Defendant fails to explain how *Reilly* and *Copley* are similar to the present case and why Plaintiff here could potentially receive a comparable award. *See Vanterpool v. Amazon.com.Dedc, LLC*, 8:17-CV-1347-T-33MAP, 2017 WL

2609551, at *3 (M.D. Fla. June 16, 2017) ("[Defendant] failed to compare the mental and emotional states of [plaintiff] and the . . . plaintiff [in the alleged comparable case], which is necessary to determine whether the compensatory damages claims for mental anguish are analogous."); *see also Kruse*, 2021 WL 2632436 at *5 ("However, [the defendant] fails to explain whether these cited cases are comparable to this action. Even if the [c]ourt treats those cases as 'comparable' cases, [the defendant] does not explain why the compensatory damages in those cases justify including $15,000 in the amount in controversy here."); *Walcott*, 2021 WL 3518204 at *2 ("Here, [the defendant] does not indicate how the cited case supports its argument that compensatory damages here will push this case past the jurisdictional minimum. Therefore, compensatory damages will not be included when calculating the amount in controversy.").

Although Defendant contends that its estimate of $30,000 in compensatory damages is a "conservative" estimate relative to the cases it cited in the removal notice, the court cannot determine what a reasonable estimate of compensatory damages would be without engaging in "impermissible speculation." (Doc. 1 at 9). *Lowery*, 483 F.3d at 1211. Therefore, the court declines to include compensatory damages in the amount in controversy calculation. *See Golden v. Dodge-Markham Co.*, 1 F. Supp. 2d 1360, 1366 (M.D. Fla. 1998) ("Compensatory damages are extremely nebulous. Making a general blanket statement that, if [p]laintiff prevails, compensatory damages could certainly entitle him to thousands of dollars, does not rise to the levels of proving,

by a preponderance of the evidence, that the amount in controversy exceeds $75.000.00.").

### 4. Punitive Damages

Defendant contends that a $100,000 estimate of Plaintiff's punitive damages should be included in the amount in controversy calculation because "Plaintiff does not allege or otherwise indicate that she is seeking less than the maximum amount of punitive damages recoverable under the FCRA, therefore, it is appropriate to include the full $100,000 amount authorized by the FCRA." (Dkt. 1 at 9.) "The FCRA caps the recovery of punitive damages at $100,000." *Kruse*, 2021 WL 2632436 at *6 (citing Fla. Stat. § 760.11(5)). However, a party cannot unequivocally assert that the full $100,000 statutory cap should be added to the amount in controversy solely because it is the maximum award allowable under the FCRA statute. *Vanterpool*, 2017 WL 2609551 at *3–4. If this was the case, "every [FCRA] case filed in state court containing a request for punitive damages would automatically meet the jurisdictional minimum for removal to federal court. That result would be untenable." *Boyd v. N. Trust Co.*, No. 8:15–cv–2928–T–33TBM, 2016 WL 640529, at *4 (M.D. Fla. Feb. 18, 2016).

Defendant cites to three cases from the Middle District of Florida in support of the proposition that $100,000 of punitive damages should be included because Plaintiff has not indicated she is seeking less than the statutory maximum, and Plaintiff has placed the full amount of attorneys' fees at issue by alleging Defendant's discrimination was "intentional, willful, and malicious." (Dkt. 16 at 10–11) (citing

- 11 -

*Brown v. Cunningham Lindsey*, No. 3:05-cv-141-J-32HRS, 2005 U.S. Dist. LEXIS 38862, at *16 (M.D. Fla. May 11, 2005); *Booker v. Doyon Sec. Servs.*, No. 16-24146-CIV-LENARD/GOODMAN, 2017 Dist. LEXIS 220781, at *10–11 (M.D. Fla. Jan. 20, 2017); *Ferdinand v. Hilton Mgmt., LLC*, No. 6:18-cv-1547-Orl-41DCI, 2019 U.S. Dist. LEXIS, at *4 (M.D. Fla. Apr. 9, 2019)). However, these cases are not binding upon this court and courts within this district are split on these issues. *See Balkum v. Pier 1 Imports (U.S.), Inc.*, No. 6:17-cv-1299-Orl-37DCI, 2017 WL 3911560, at *3 (M.D. Fla. Sept. 7, 2017) (remanding case where the plaintiff had not indicated she was seeking less than the statutory maximum for punitive damages); *Burrows v. State Farm Mut. Auto. Ins. Co.*, No. 8:17-cv-212-T-27AEP, 2017 WL 3316131, at *(M.D. Fla. Aug. 3, 2017) ("[The defendant] relies only on [the] [p]laintiff's conclusory allegations of willful and malicious conduct and her unspecified claim for punitive damages. [The defendant] has therefore failed to meet its burden of proving that $100,000 in punitive damages is in controversy.").

Therefore, the court will only consider the facts Defendant has put forth to support that punitive damages should be included in the amount in controversy. "A defendant seeking to remove based of a claim for punitive damages must affirmatively establish jurisdiction by proving jurisdictional facts that make it possible that punitive damages are in play." *Boyd*, 2016 WL 640529 at *4 (quoting *McDaniel v. Fifth Third Bank*, 568 F. App'x 729, 732 (11th Cir. 2014)). Here, the court finds that the defendant has not established any jurisdictional facts beyond the fact that Plaintiff requested punitive damages and alleged Defendant's conduct was "intentional, willful, and

malicious." (Dkt. 16 at 10–11.) This is insufficient to prove, by the preponderance of the evidence, that a specific amount of punitive damages should be included in the amount in controversy calculation. *See Boyd*, 2016 WL 640529, at *4 (declining to include punitive damages when neither party "provided a persuasive discussion of [Plaintiff's] claim for punitive damages"); *see also Kruse*, 2021 WL 2632436, at *7 (quoting *Balkum*, 2017 WL 3911560, at *3) ("'[P]unitive awards are entirely dependent on the egregiousness of the particular violation' and 'a great disparity in the amount of jury awards' exists in cases with FCRA claims.") Accordingly, the court declines to include punitive damages in the amount in controversy calculation. *See Connally v. Fla. HMA Reg'l Serv. Ctr., LLC*, No. 8:21-cv-2750-VMC-CPT, 2022 WL 92829, at *3 (M.D. Fla. Jan. 10, 2022) ("[I]t would be rank speculation for the [c]ourt to add an amount of punitive damages to the amount in controversy calculation as no evidence of the actual punitive damages at issue in this case has been provided. Thus, the [c]ourt will not include . . . punitive damages in its calculation.")

### 5. Attorney's Fees

Defendant contends that $31,250 in attorney's fees should be included in the amount of controversy because this represents a conservative estimate of potential fees Plaintiff will be entitled to if Plaintiff litigates this action through trial. (Dkt. 1 at 10.) Plaintiff contends that her attorneys' fees should not be considered in determining the amount in controversy because the case is in its mere infancy and at the time of removal, her attorneys' fees were and remain minimal. (Dkt. 9 at 12.)

Attorney's fees up to the point of removal may be included to determine the amount in controversy. *See Miller Chiropractic & Med. Centers, Inc. v. Progressive Select Ins. Co.*, No. 8:16-cv-3034-VMC-MAP, 2016 WL 6518782, at *2 (M.D. Fla. Nov. 3, 2016) ("For jurisdictional purposes, the attorney's fees included in the amount-in-controversy calculation are set as of the date of removal."); *Unwin v. Hartford Ins. Co. of the Midwest*, No. 2:21-cv-135-SPC-NPM, 2021 WL 1821415, at *2 (M.D. Fla. Apr. 9, 2021) ("The [c]ourt will follow the approach adopted by many other courts in this District and include those [attorney's] fees likely accrued at the time of removal."). In this case, there is no evidence of the fees incurred by Plaintiff's attorneys up to the point of removal. As such, this court will not speculate concerning the amount of Plaintff's attorneys' fees. *See Leise v. Walmart Inc.*, No. 8:23-cv-2281-VMC-AEP, 2023 WL 6890725, at *2 (M.D. Fla. Oct. 19, 2023) (declining to include attorney's fees in the amount in controversy when "[t]here [was] no evidence of the attorney's fees incurred by [the] [p]laintiff pre-removal."). Even if the court was to consider Defendant's calculation of Plaintiff's potential attorneys' fees through trial, Plaintiff's damages would still not meet the required jurisdictional amount.[3]

Therefore, the court concludes that the amount in controversy that has been proven by a preponderance of the evidence is back pay damages totaling $11,318.40. Accordingly, the court is unable to exercise diversity jurisdiction or federal question

---

[3] The Defendant estimates that Plaintiff's attorneys' fees through trial would amount to $31,250.00 (125 hours at a $250 hourly rate). (Dkt. 1 at 10.) This amount, combined with the calculated back pay damages of $11,318.40, totals $42,568.40. Without any supporting evidence, the court declines to address the reasonableness of Defendant's calculation.

jurisdiction over Plaintiff's claims and therefore lacks subject matter jurisdiction over this matter.

## B. Attorney's Fees and Costs

Plaintiff also requests the court award her attorney's fees and costs incurred as a result of Defendant's removal. (Dkt. 9 at 12.) "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). However, "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005). Although the court rejected Defendant's amount in controversy calculation, the court concludes that the Defendant did not lack an objectively reasonable basis for seeking removal and Plaintiff has not identified an unusual circumstance that exist to justify an award of fees and costs. As such, the court denies Plaintiff's request for attorney's fees and costs.

## CONCLUSION

Accordingly:

1. Plaintiff's Motion to Remand (Dkt. 9) is **GRANTED** in part and **DENIED** in part as follows:

    a. The Motion is **GRANTED in part** insofar as the Clerk is **DIRECTED** to **REMAND** this case to the Circuit Court of the Seventh Judicial

Circuit in and for Volusia County, Florida, Civil Division, Case Number 2024 11563 CICI.

b. The Clerk is **FURTHER DIRECTED** to mail a certified copy of this order to the Clerk of the Court for the Seventh Judicial Circuit in and for Volusia County, Florida; terminate any pending motions and deadlines; and close this case.

2. The Motion is otherwise **DENIED**.

**ORDERED** in Orlando, Florida, on November 22, 2024.

_____
JULIE S. SNEED
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record